# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-588V
### (Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *    *
                                                   *
                                                   *
TIMOTHY SELLING,                                   *    Special Master Oler
                                                   *
                      Petitioner,                  *    Filed: May 2, 2019
                                                   *
v.                                                 *
                                                   *
                                                   *    Damages; Table Injury; Influenza
SECRETARY OF HEALTH AND                            *    (Flu) Vaccine; Shoulder Injury
HUMAN SERVICES,                                    *    Related to Vaccine Administration
                                                   *    (SIRVA); Pain and Suffering; Past
                      Respondent.                  *    Unreimbursed Expenses.
                                                   *
* * * * * * * * * * * * * * * * * * * * * * *      *
```

*Maximillian J. Muller,* Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Ryan D. Pyles*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On May 18, 2016, Timothy Selling ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"). The petition alleges that the influenza ("flu") vaccination Mr. Selling received on October 13, 2014 caused him to develop "left shoulder injuries" immediately after vaccination. Pet. at 1, ECF No. 1.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.        Procedural History[3]

Based on the allegations raised in the petition, this case was initially assigned to the special processing unit ("SPU") overseen by Chief Special Master (CSM) Dorsey. *See generally* SPU Initial Order, ECF No. 6. For approximately seven months, the parties attempted to informally resolve this case. *See* ECF Nos. 9-10, 12-18, 20, 22-23. On March 3, 2017, Respondent filed a status report stating that the parties' settlement positions remained divergent and requesting further proceedings be scheduled in this case. ECF No. 24.

The case was transferred out of the SPU on June 26, 2017 and was reassigned to two other special masters before eventually being reassigned to my docket on December 1, 2017. *See* ECF Nos. 32-37. I held a fact hearing on April 4, 2018. Petitioner and his wife testified via video teleconference regarding the onset of his symptoms after the October 13, 2014 flu vaccination. *See* minute entry of 4/4/2018.

After considering the entire record of this case, including the testimony of the witnesses, the medical records, and affidavits, I issued a Ruling on Onset on May 24, 2018 finding that Petitioner began to experience left shoulder pain within 48 hours of his October 13, 2014 flu vaccination. *See* Ruling on Onset at 11.

On June 18, 2018, Respondent filed an Amended Rule 4(c) Report stating in relevant part:

[W]hile preserving his right to appeal the Special Master's finding that [P]etitioner began to experience left shoulder pain within forty-eight hours of receiving his October 13, 2014 flu vaccination in his left arm, [R]espondent accepts the Court's Ruling on Onset, dated May 24, 2018, as the law of the case for purposes of further proceedings before the Special Master.

Am. Rule 4(c) Rep. at 5, ECF No. 47. Respondent additionally acknowledged that: "[i]n light of [my] fact ruling, and [the] medical record evidence submitted in this case, [Respondent] has concluded that [P]etitioner suffered SIRVA [Shoulder Injury Related to Vaccine Administration] as defined by the Vaccine Injury Table." *Id.* Respondent further agreed that Petitioner suffered the residual effects of his condition for more than six months. *Id.*

In light of this, on June 21, 2018, I ruled that Petitioner is entitled to compensation. *See* Ruling on Entitlement, ECF No. 48.

Thereafter, the parties filed briefs laying out their positions with respect to damages. *See* Pet'r's Br., ECF No. 55; Resp't's Br., ECF No. 56. Petitioner requests a damages award of $139,257.64, Pet'r's Br. at 1, and Respondent recommends a total award of $90,365.82, Resp't's Br. at 1. Based on my review of the file, the parties' submissions, and similar cases in the Vaccine

---

[3] In this section, I only provide a brief summary of the lengthy procedural history of this case. A detailed accounting of the procedural history is outlined in my Ruling on Onset issued on May 24, 2018. *See* Ruling on Onset at 2-3, ECF No. 46.

Program, I find that Petitioner is entitled to a total award of **$114,505.82**.  My basis for this determination is set forth below.

## II.   Factual History[4]

### A.   Medical records

On October 13, 2014, Petitioner received a flu vaccination in the left deltoid at a Safeway pharmacy at age 55.  Ex. 1 at 2.  On December 15, 2014, Petitioner visited his primary care physician ("PCP") for a follow-up and reported shoulder/left upper arm pain. Ex. 2 at 15-16.  His shoulder had a limited range of motion on examination and Petitioner was referred to an orthopedist. *Id.* at 17.

On January 8, 2015, Petitioner saw Physician Assistant Jennifer Neil for an orthopedics consultation at OrthoArizona for left shoulder pain over his lateral arm that started "about [three] months ago." Ex. 2 at 41, 43. Petitioner did not "recall any specific injury." *Id.* at 41. The assessment was "some impingement of [petitioner's] left shoulder" and, as a result, "mild frozen shoulder." *Id.* at 42. Petitioner received a referral for physical therapy. *Id.*

On March 16, 2015, Petitioner had his first physical therapy session. Ex. 4 at 32.  He reported that the "pain began about 3-6 months ago with an insidious onset." *Id.*  A steroid injection about one month previously had not helped. *Id.*

On April 14, 2015, Petitioner saw his PCP for anxiety and a Xanax refill and reported "ongoing shoulder trouble." Ex. 2 at 12-14.  He had a limited range of motion bilaterally in both shoulders. *Id.*

On June 4, 2015, Petitioner saw Dr. Vincent Russo at OrthoArizona for persistent left shoulder symptoms. Ex. 4 at 27.

On June 12, 2015, an MRI of Petitioner's right shoulder showed a "[s]mall 4 mm partial-thickness articular surface (50%) insertional tear of the anterior infraspinatus tendon." Ex. 4 at 23-24.  Petitioner's left shoulder MRI showed a "[s]mall sub-4 mm far anterior insertional footprint tear approximating the articular surface and adjacent to the rotator interval capsule" with no muscle atrophy, as well as mild adjacent capsulitis. *Id.* at 25-26.

On August 6, 2015, Petitioner underwent a manipulation of both shoulders under general anesthesia for his "bilateral adhesive capsulitis, left more symptomatic than the right with rotator cuff tear, right shoulder." Ex. 4 at 19.  During a follow-up with Dr. Russo on August 12, 2015, Petitioner had had three physical therapy sessions since the manipulation and was doing well. Ex. 2 at 35.  On September 3, 2015, petitioner was "doing well in his early postoperative course particularly on the left side" and was ordered to continued physical therapy. *Id.* at 32.

---

[4] In this section, I only provide a brief summary of the facts.  A detailed accounting of the factual history is outlined in my Ruling on Onset issued on May 24, 2018.  *See* Ruling on Onset at 4-10, ECF No. 46.

On December 23, 2015, Petitioner's records indicate "excellent progress." Ex. 2 at 24. However, Petitioner reported that about a month prior he began to have some discomfort in his left shoulder, particularly at night with internal rotation. *Id.* On examination, he had a "quite excellent range of motion with only limitations of extremes of internal rotation of the left shoulder." *Id.* at 25. The diagnosis was left frozen shoulder and Petitioner received a steroid injection. *Id.* at 25.

On December 29, 2015, Petitioner returned to physical therapy and noted that the steroid injection "took a few days to work," but that his pain was minimal at that time. Ex. 4 at 4. The assessment was "shoulder pain and mobility deficits associated with beginning stages of adhesive capsulitis." *Id.* at 5.

Petitioner visited Carefree Physical Therapy on January 27, 2016 and reported "that the shoulder is feeling very normal at this point in time." Ex. 10 at 75. Petitioner indicated that "he still had slight pain in the shoulder with reaching behind his back." *Id.* This represents the last PT visit documented in Petitioner's records.

### B. <u>Testimony at the Hearing</u>

#### 1. <u>Mr. Selling - Petitioner</u>

Petitioner testified that he had received a flu vaccination every year for the past 20 years. April 4, 2018 Hr'g Tr. ("Tr.") at 10, 51. He always receives the flu shot because he got very sick with the flu in the 1990s and has been vaccinated ever since. *Id.* at 51.

On October 13, 2014 Petitioner received his flu vaccination with his wife, Nina Bloom-Selling. Ex. 1; Tr. at 11. When he received the vaccination, it felt like "there was a little bit of a half balloon … under the skin. And instead of getting better over two or three days, it just stayed there." Tr. at 55. As compared with his previous vaccinations, the pain after the October 13, 2014 flu shot was stronger and more intense. *Id.* at 55-56. Also distinguishing was the fact that the pain from this flu shot never went away; instead it started getting worse. *Id.* at 12. After a while, Petitioner testified that his shoulder became very uncomfortable and painful, to the point of restricting the movement of his left arm. *Id.* His wife kept asking him to go to the doctor; he kept telling her that it would go away. *Id.* Eventually, Petitioner testified that his shoulder pain got bad enough that he made an appointment to see his family doctor, Dr. Bierman. *Id.*

Petitioner testified that he did not know what was causing his pain. Tr. at 15. For this reason, he did not mention anything to his providers about the flu shot. *Id.* Petitioner testified that he was focused on getting rid of the pain as opposed to figuring out what caused it in the first place. *Id.* at 16. Petitioner's level of pain from December 2014 through January 2015 was between an 8 and a 10 when he moved his arm in a position that strained his shoulder. *Id.* at 17. He described the pain as "relentless." *Id.*

Petitioner stated that he underwent a manipulation on August 6, 2015. Tr. at 25. The day after the procedure, Petitioner had to start exercising his shoulder right away. *Id.* at 26. He testified that the exercises were extremely painful. *Id.*

Although he had a recurrence of his left shoulder pain in December of 2015, the pain in his left shoulder eventually went away. Tr. at 32, 36. As of the beginning to the middle of 2017, Petitioner was totally pain-free in his left shoulder. *Id.* at 36. His shoulder remained pain-free as of the date of the hearing. *Id.* at 37.

### 2. Mrs. Bloom Selling – Petitioner's wife

Mrs. Nina Bloom-Selling helps her husband with his private investigator business. Tr. at 59. She and the Petitioner have been married for 28 years. *Id.*

On October 13, 2014, she and the Petitioner both went to the Safeway Pharmacy to get their annual flu shot. Tr. at 60. They do this together each year. *Id.* Mrs. Selling testified that she had a little discomfort after her shot. *Id.* But as she described it, her husband had a lot of pain in his left shoulder and it kept getting worse. *Id.* at 60-61. Petitioner is not one to see a doctor, and Mrs. Selling testified that she had to beg him to go in for treatment. *Id.* at 60.

Mrs. Selling also testified about attending some of Petitioner's medical appointments and physical therapy sessions with him. Tr. at 61-62. She generally discussed Petitioner's shoulder pain, and how difficult his injury was for both of them. *Id.* at 63-65.

## III.    Disputed Damages

The parties agree that an award for compensation in this case is limited to past pain and suffering and past unreimbursed expenses. However, the parties dispute the amount of each to be awarded. Petitioner seeks $130,000.00 for pain and suffering and an additional $9,257.00[5] in past unreimbursed medical expenses, $4,140.00 of which pertain to psychotherapy/counseling services.

Respondent recommends $85,000.00 for pain and suffering and $5,365.82 in past unreimbursed medical expenses. Respondent argues that Petitioner's psychotherapy/counseling services are "neither a reasonably necessary expense, nor a sufficiently vaccine-related expense." Resp't's Br. at 14.

## IV.    Legal Standard

In the Vaccine Program, compensation to be awarded shall include "actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." § 15(a)(4). Additionally, Petitioner may recover "actual unreimbursable expenses incurred before the date of the judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation,…counseling, emotional or behavioral therapy…determined to be reasonably

---

[5] Respondent points out that the correct undisputed amount for unreimbursed medical expenses other than the psychotherapy/counseling services is $5,365.82. Resp't's Br. at 13. The total sought by Petitioner, as corrected, should therefore be $9,505.82.

necessary." § 15(a)(1)(B).  Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-92V, 1996 WL 147722, at \*22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at \*9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-172V, 1996 WL 300594, at \*3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation").  Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at \*9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at \*3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), vacated and remanded on other grounds, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters have relied on their own experience in adjudicating similar cases and have looked to prior awards in determining the appropriate amount of compensation for pain and suffering. *See Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."); *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).  Pain and suffering is not, however, determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## V.   Discussion

### A.  **Past Unreimbursed Medical Expenses**

The parties agree on Petitioner's past unreimbursed expenses other than his psychotherapy/counseling services, totaling $4,140.00.   Respondent argues that these psychotherapy services were neither reasonably necessary, nor sufficiently vaccine-related.

Petitioner began psychotherapy sessions with Dr. Daniela Roher in February 2016. Ex. 11 at 2.  They ended in December 2016. *Id.*  Dr. Roher indicated that Petitioner came to see her "complaining of chronic, physical pain due to problems with one shoulder…caused by a reaction to the flu vaccine he had in 2014." *Id.* at 3.  Dr. Roher goes on to say that "[d]uring the course of our treatment, it became evident that the trauma caused by the reaction to the flu shot in 2014 had exacerbated Mr. Selling's pre-existing symptoms of anxiety and depression." *Id.*

In order for Petitioner to recover past unreimbursed vaccine-related expenses, they must be found to have been "reasonably necessary." § 15(a)(1)(B). This may include costs related to medical care, counseling, therapy, special equipment, and travel. *Id.*  Petitioner bears the burden of showing that his requested costs are reasonably necessary. *Brewer*, 1996 WL 147722, at \*13.

I find that based on Dr. Roher's representations, Petitioner sought services that were sufficiently vaccine-related and reasonably necessary. Petitioner initiated treatment with Dr. Roher after the causal vaccination and while he continued to suffer from his vaccine-related injury and pain. Dr. Roher treated Petitioner for only a limited period in 2016, clearly indicating a specific need. Petitioner's pain lasted from October 2014 until approximately early to mid-2017. Moreover, Dr. Roher had not been treating Petitioner prior to his vaccine injury and Petitioner is not seeking reimbursement for any services he may have received after becoming totally pain-free. As such, I find that Petitioner is entitled to $4,140.00 for psychotherapy services, in addition to the undisputed $5,365.82, for a total of $9,505.82 in past unreimbursed expenses.

## B. **Past Pain and Suffering**

The most significant element of compensation to be awarded is Petitioner's request for pain and suffering. Petitioner seeks $130,000.00 and Respondent recommends $85,000.00.

In support for his request, Petitioner cites to *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) and *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018). Pet'r's Br. at 4. In *Collado*, Chief Special Master Dorsey awarded the petitioner $120,000.00 for pain and suffering where she endured several months of pain, had a number of doctor visits and physical therapy sessions, and required open surgical intervention for rotator cuff repair and debridement. *See Collado*, at *6-7. In *Knudson*, again Chief Special Master Dorsey awarded the petitioner $110,000.00 for pain and suffering where she endured several months of pain, had several examinations and a total of 13 physical therapy sessions, and required arthroscopic surgery in her left shoulder. *See Knudson*, at *8-9. In both instances, the petitioners appear to have recovered within 12-14 months after the causal vaccination.

Respondent offers a lengthy discussion of the statutory $250,000.00 cap for pain and suffering and the legislative history and intent behind it. He argues that Petitioner's pain had largely subsided a little more than one year after vaccination, and that his initial pain was not as severe as other SIRVA cases in the program. Respondent recommends an award of $85,000.00 for pain and suffering in this case. *See generally* Resp't's Br.

Petitioner obtained a flu vaccination in his left shoulder on October 13, 2014 at the age of 55. Ex. 1 at 2. As a result, Petitioner suffered "sharp" pain in his left shoulder and could not reach overhead or behind his back, he could not use his left arm to open or close his car door, he could not put on his belt, tuck in his shirt or put on a coat. *See* Ex. 4 at 4, 32. He participated in approximately 18 physical therapy sessions for his left shoulder pain on and off for approximately 10 months. *See* Ex. 4; Ex. 10 at 75. Approximately eight months after the vaccination, an MRI of Petitioner's left shoulder revealed a small rotator cuff tear and mild capsulitis. Ex. 4 at 25-26. At the recommendation of Dr. Vincent Russo, Petitioner underwent a manipulation[6] procedure under general anesthesia on August 6, 2015. Ex. 4 at 19. Petitioner's prognosis was "excellent" however

---

[6] Manipulation is "the forceful passive movement of a joint beyond its active limit of motion." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1118 (31st ed. 2007).

he continued to endure pain and required another steroid injection on December 23, 2015. Ex. 2 at 24-25.  Petitioner was not totally pain-free until the beginning to middle of 2017. Tr. at 36.

Based on my observation and assessment of Petitioner during his testimony at the fact hearing, and on my review of the record, it is clear that Petitioner is a mentally competent adult, who was fully aware of the injury he suffered.

With respect to the severity and duration of his injury, I find that Petitioner suffered severe and debilitating pain for the ten months between his vaccination and the manipulation procedure in August 2015.  He suffered from a limited range of motion and was unable to perform a number of basic tasks for several months.  His condition was compounded by the fact that Petitioner is the sole caregiver to his wife who suffers from a retinal disease resulting in very poor vision. Tr. at 59, 63-64.  Petitioner had several appointments with his primary care physician, an orthopedic specialist and a physical therapist.  He participated in several physical therapy sessions on and off for approximately ten months.  Following the manipulation, his pain improved, but he needed and received an additional steroid injection in late 2015.  He also saw a psychologist in 2016 due to trauma from his physical symptoms after the flu shot.  Petitioner continued his home exercises until he was totally pain-free in 2017 – more than two years after his vaccination.

Unlike *Collado* and *Knudson*, I find that Petitioner's condition did not require open and invasive surgery, while at the same time I acknowledge that the necessity for general anesthesia indicates great pain during his manipulation procedure.  Petitioner required at least two steroid injections and his daily quality of life was greatly affected by the debilitating pain he suffered as a result of his vaccination.  In reviewing past SIRVA cases in the Vaccine Program, I also note that the duration of pain in this case was longer than most.  Based on the record as a whole, I find that the facts and circumstances in this case warrant an award of $105,000.00 for actual past pain and suffering.

## VI.    Conclusion

Accordingly, the I award Petitioner a lump sum payment of **$114,505.82**, representing $105,000.00 in compensation for actual past pain and suffering and $9,505.82 in compensation for actual past unreimbursable expenses, in the form of a check payable to the petitioner, Timothy Selling. This amount represents compensation for all damages sought and that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this Decision.[7]

Any questions regarding this Order may be directed to my law clerk, Ahmed Almudallal, by email at Ahmed_Almudallal@cfc.uscourts.gov.

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**/s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master